## Allegheny National Bank's Appeal.

1. Owelty of partition constitutes a first lien on the purpart of the former tenant in common, and is entitled to the priority over a mortgage of his undivided interest given by him before partition.

2. McCandless's Appeal, 2 Out. 489, followed.

3. A testator directed his real estate to be sold and divided equally among his children; but in the distribution he directed, that $1,000 should be deducted from the share of his daughter, A. E., and also any amount of money, that he might pay on account of indorsements, or otherwise. The children elected to take the land as land, and proceedings in partition were accordingly instituted. Testator had in his lifetime indorsed a note for $1,000, given by A. E.'s husband to B., which note was never paid. Equal division of the tract being found impracticable, a certain part of it was accordingly awarded to A. E., subject to certain sums charged as owelty of partition, among them, a charge of $1,000 in favor of B. The tract, thus awarded to B., being subsequently sold under an execution and realizing a sum insufficient to meet all the charges of owelty thereon, *Held*, that the charge in favor of B. had no priority over the other charges, but must share with them pro rata.

November 8th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas No. 1, of *Allegheny county:* Of October and November Term 1881, No. 182.

This was an appeal by the Allegheny National Bank of Pittsburgh, from the same decree mentioned in the case of McCandless's Appeal, 2 Out. 489.

The facts material to this case, were as follows:—John Adams died September 3d 1872, having, by his will, dated January 25th 1870, devised his real estate to his widow for life, directing that, after her death, the same should be sold, and the proceeds divided equally amongst his seven children, all of whom survived him; and, he further directed, " that in the pay-

ment of the distributive share of my daughter, Ann Eliza, $1,000 shall be deducted, for the lot already conveyed to her, and also any amount of money, that I may pay on account of indorsement, or otherwise, or that my executors may have to pay after my decease."

At the time of his death, John Adams was an indorser upon a promissory note of W. H. Mackey, the husband of said Ann Eliza, for $1,000, held by the Allegheny National Bank.

Mrs. Adams, the testator's widow, released her life estate in the real estate, and the seven children, being of full age, elected in writing to take their interest as land, instead of the proceeds thereof.

On October 8th 1875 the said Ann Eliza Mackey, together with her husband, William H. Mackey, mortgaged her undivided interest in the land so devised by her father, to Robert W. Mackey for $2,000.

In 1876 a bill in equity for partition, was filed by John W. Adams, one of the devisees, and the cause was referred to a master, who found, inter alia, that the said indorsement of the testator of the $1,000 note, held by the Allegheny National Bank, was, under testator's will, a charge on the share of the said Ann Eliza Mackey, but without preference over other charges thereon created by the testator. Equal partition being impracticable, the land was divided into purparts, one of which, valued at $9,455, was allotted to Ann Eliza Mackey, subject to certain sums, charged as owelty of partition, among which was the sum of $1,000, with interest, payable to the Allegheny National Bank for said indebtedness of the testator. The master's report was confirmed by a final decree of the court, which was not appealed from.

Subsequently, in 1880, the said mortgage of Ann Eliza Mackey for $2,000 was foreclosed by scire facias, and the tract, allotted in the partition to Ann Eliza Mackey, was sold at sheriff's sale for $1,600. The sheriff made a special return in favor of the mortgage creditor, and, exceptions being filed thereto, the matter was referred to an auditor, who reported distribution of the fund to the several parties entitled to owelty of partition, pro rata (the fund being insufficient to pay said owelties in full), including a proportional share to the Allegheny National Bank. The bank filed exceptions to the report, claiming, that the auditor should have awarded payment of its claim in full, with interest, on the ground that the same, having been expressly charged upon the distributive share of Ann Eliza Mackey by the clause of John Adams' will, hereinbefore quoted, was entitled to a preference over all claimants on the fund for owelty of partition.

The court, after argument, overruled the exceptions, and

confirmed the report, from which decree the Allegheny National Bank took this appeal.

*George Shiras, Jr.* (*Charles C. Dickey* with him), for the appellant.—The $1,000 note, held by the appellant, was a testamentary charge on the distributive share of Ann Eliza Mackey, under her father's will. This was judicially settled by the decree in partition. The only object of the partition was to divide the land between the parties entitled thereto, subject to owelties, as between themselves. The share of Ann Eliza, being already subject to the testamentary charge, as a first lien, the owelties, charged thereon in favor of the devisees, were also subject thereto. The testator's intention, as expressed in his will, was that his land should be sold, and the $1,000 note paid by his executors out of the proceeds, the amount thereof to be deducted, in the distribution, from Ann Eliza's share of such proceeds. The fact, that the devisees elected to take land, instead of money, cannot affect the intention of the testator. Nor can the fact, that the Allegheny National Bank's claim was treated, in the partition, as in the nature of owelty. This was irregular, and was done only for convenience sake. Such charge as "owelty" could not, however, reduce its prior testamentary lien to an equality with the lien of the owelties, which arose out of the partition itself. The testamentary lien, having been discharged by the sheriff's sale of Ann Eliza's purpart, is payable out of the proceeds in preference to liens created by Ann Eliza on her undivided interest before the partition, or to liens, which originated in the partition itself : Tower's Appropriation, 9 W. & S. 103 ; McFait's Appeal, 8 Barr 290. The court, therefore, erred in awarding distribution to the appellants, pari passu with the other claimants on the fund.

*Slagle* (with him *Wiley, John Barton* and *Whitesell & Son*), for the appellees.—The $1,000 note was not, as claimed, a testamentary lien on Ann Eliza's share of the testator's real estate, because her interest under the will was personal, and the debt was only to be regarded in the matter of distribution among the legatees. Even if a general lien on the testator's real estate at the time of his death in 1872, such lien had expired at the time of the sheriff's sale in 1880. It was only because the appellant's debt remained unpaid, and because the devisees elected to take land instead of proceeds, that the claim was admitted in the partition, without contest, as equitable owelty. The bank's claim then, as a lien, takes its rise in the partition, and, standing on the same plane with other owelty, must participate ratably therewith. The decree in the partition suit necessarily settled this, and, being unappealed from, is con-

clusive on the bank. The recent decision of this court on the appeal of McCandless, executor of Robert W. Mackey, from the same decree to which this appeal is taken, also to some extent rules this case.

Mr. Justice MERCUR delivered the opinion of the court, January 3d 1882.

This fund in contention was produced by a sheriff's sale of the land of Mrs. Annie E. Mackey. It was allotted to her in the partition of the estate of her father John Adams. In his devise to her of a distributive share, he directed that certain debts and claims should be deducted therefrom, thus practically making them a charge on her portion for the benefit of the estate. The claim of the appellant is one of those referred to in the will. In the partition this claim was charged as owelty of partition on the purpart allotted to Mrs. Mackey. The appellant claims by virtue of the decree so charging it. The appellee claims on a mortgage executed by Mrs. Mackey and her husband on her interest in the whole land, before partition.

The decree, imposing the sum charged as owelty, on the purpart allotted to Mrs. Mackey, is in an unusual form, and rather irregular; but it stands as a final decree. In this collateral proceeding its validity and conclusive effect cannot be questioned. It does, however, appear on the facts found by the auditor, that the decree was equitable between all the parties thereto, and worked no injustice to her creditors. Full effect must then be given to the claim of the appellants as one of owelty. Whether it constitutes a lien prior to that of the mortgage is the question.

The precise question was before us in the recent case of McCandless' Appeal, 2 Outerbridge 489. The authorities were fully examined and considered. We there held that owelty of partition constitutes a first lien on the purpart of the former tenant in common, and is entitled to priority over a mortgage on his undivided interest, given by him before partition. That case is fully sustained by the authorities. It is unnecessary to cite them now, or repeat the argument there presented. We adhere to it as a settled rule of law. In so far as the first and third assignments might be understood as giving to the claim of the appellant a preference over other claims of owelty secured by the decree in partition, they are not sustained. With all such its lien stands on an equal footing. The second assignment is sustained.

Decree reversed, and record remanded with instructions to decree distribution conformably with this opinion, and that the costs of this appeal be paid out of the fund.